IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUZ CASTRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 7088 |
| v. ) | |
| ) | Magistrate Judge |
| MICHAEL J. ASTRUE, ) | Maria Valdez |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Luz Castro's claim for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Castro's Motion for Summary Judgment [Doc. No. 10] is denied.

## BACKGROUND

### I.    PROCEDURAL HISTORY

Castro originally applied for Disability Insurance Benefits on May 11, 2007, alleging disability since November 16, 2006.[1] (R. 72-76.) The application was denied

---

[1] A previous application for benefits, made in 2005, alleged an onset date of January 14, 2002. That application was also denied after a hearing, and no review of the decision was made. (R. 32-37.) Plaintiff's counsel expressly stated at the hearing on the present application that she alleged a disability beginning with the unadjudicated period, the date after the Administrative Law Judge's November 15, 2006 decision denying benefits for her earlier application. (R. 17.)

on July 20, 2007 and upon reconsideration on September 18, 2007. (R. 27-28, 40-44, 48-51.) Castro filed a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on February 17, 2009. (R. 9, 52.) Castro personally appeared and testified at the hearing and was represented by an attorney. (R. 9.) No one else testified at the hearing.

On April 28, 2009, the ALJ denied Castro's claim for benefits and found her not disabled under the Social Security Act. (R. 13.) Following Castro's timely request for review of the decision, the Social Security Administration Appeals Council denied her request for review (R. 1-4), making the ALJ's decision the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.   FACTUAL BACKGROUND

### A.   Background

Castro was born on November 24, 1965, and at the time of the ALJ hearing was forty-three years old. (R. 17.) She is five feet five inches tall and weighs 165 pounds. (R. 19.) She lives with her husband and three children. (R. 17-18.) Castro was born in Mexico, where she went to school only through the sixth grade. (R. 18.) As of the hearing date, she had been in the United States for twenty-seven years. (*Id.*) Castro was most recently employed as a sander/finisher, where she sanded doors, basketball backboards, and boats. (R. 22.) Prior to her employment as a sander, Castro worked as a machine operator in a warehouse and a packer in a

2

factory. (R. 100.) Castro claims disability due to hand pain caused by bilateral carpal tunnel syndrome.

### B. Testimony and Medical Evidence

#### 1. *Castro's Testimony*

Castro used a Spanish interpreter at the ALJ hearing, but she did not expressly testify about her level of English fluency. (R. 16.) Castro testified that she has suffered pain in both hands for about ten years and also has trouble with her back, arms, and shoulders. (R. 20.) She claimed that every time she moves her hands, it feels like her arms are about to break. (R. 21.) She had a steroid injection in her shoulder in 2005, but did not have any shots since then. (*Id.*) She was not taking any medication at the time of the hearing, nor was she using heat or ice on her hands for pain relief. (R. 21, 23.) She uses splints on her hands about twice a week, when she has to clean the house. (R. 23.) When she does clean, she has to stop about every ten minutes because her hands get tired, and she does not have strength anymore. (R. 23-24.) It also bothers her hand to write. (R. 24.) Castro stated that she had no problems opening a car door or lifting a gallon of milk, but she could not carry a gallon of milk for a period of time because her hands would get tired. (R. 22-23.) Castro does carry groceries into the house when her children are not available to assist her. (R. 25.) She spends her time watching television and doing chores. (R. 24.) Castro last saw her physician six months before the hearing; he told her that he thought she "was okay," and said to come back if she was not feeling well. (R. 21-22.)

3

## 2. *Medical Evidence*

Castro has identified the following medical evidence as relevant to her claim.[2] On February 12, 2007, she saw Dr. Terry Light, whose progress notes indicate that her "symptoms have improved with night splinting," although elbow flexion provoked numbness in both hands. (R. 161.) An electromyography ("EMG") test reviewed by another physician showed that "[s]he is improving," and she was given a treatment plan to continue splinting, with a return visit in two months. (*Id.*) Castro saw Dr. Light again on April 9, 2007, when she reported to him that the numbness continued at night. It was relieved by splint wear on her elbow, but alternating the splint caused the other hand to become symptomatic. (*Id.*) His objective findings included positive elbow flexion bilaterally, with normal ulnar intrinsic strength bilaterally. (*Id.*) Dr. Light again recommended consistent nightly splinting of her left arm for two months and that she return at that time. (*Id.*)

On June 27, 2007, Castro underwent another EMG in order to rule out bilateral ulnar nerve lesions; the test was interpreted by Dr. Michael Merchut. (R. 163-65.) A physical examination showed 5/5 upper limb power, equal reflexes, and normal sensation to cotton and pin. (R. 163.) After summarizing the EMG findings, Dr. Merchut concluded that the test was normal, "without EMG evidence for an

---

[2] Castro also listed two reports by DDS physicians. One report denied the claim due to insufficient evidence; the other diagnosed her with numbness of the hands but found that the condition was not severe prior to her date last insured. (R. 166-71.) These reports do not support a finding of disability, and the ALJ expressly gave them minimal weight because they did not include evidence of limitations that was added at the hearing. (R. 12.) Accordingly, they need not be discussed in detail in this opinion.

4

ulnar mononeuropathy on either side, nor for a typical carpal tunnel syndrome (given the normal palmar orthodromic sensory studies)." (*Id.*)

Dr. Light's progress notes from July 9, 2007 state that Castro's right hand was asymptomatic, but her left hand had become more symptomatic during the day. (R. 174.) Dr. Light opined that Castro "clearly has bilateral symptomatic cubital tunnel syndrome with the left greater than the right," and that "[i]f her symptoms continue and splinting becomes problematic, consideration could be given to simple decompression of her ulnar nerves." (R. 174-75.) He recommended she return in three months. (R. 175.)

On October 8, 2007, Castro reported less tingling but continued pain in her forearms, which limited her ability to lift. (R. 176.) The doctor's assessment stated that Castro's tenderness was suggestive of lateral epicondylitis and that "she would benefit from a stretching and strengthening program." (*Id.*) He noted, however, that "her lack of discomfort with resisted wrist extension is inconsistent with this diagnosis." (*Id.*) Castro was told to return in six months. (*Id.*) Three days later, Castro met with physical therapist Erin Thomas, who educated Castro about the use of moist heat, icing, massage, and active and passive stretching. (R. 176.) Castro saw Dr. Light on April 7, 2008, and his notes state that "[s]he is much more comfortable"; "[s]he has discontinued splint use"; she had normal bilateral ulnar instrinsic strength; she was "improved"; and she only had to return as needed. (R. 174.)

## C. ALJ Decision

The ALJ found that Castro last met the insured status requirements on June 30, 2007 and that she did not engage in any substantial gainful activity from the alleged onset date of November 16, 2006 through the date last insured. (R. 10.) He found at Step 2 that Castro had the severe impairment of bilateral carpal tunnel syndrome but that the impairment did not meet or medically equal a Listing at Step 3. (R. 10-11.)

The ALJ concluded that Castro retained the residual functional capacity ("RFC") to perform light work, limited to frequent but not constant use of hands. (R. 11.) In making this RFC finding, the ALJ concluded that the objective medical evidence was not consistent with Castro's claims as to the intensity, persistence, and limiting effects of her symptoms. (*Id.*) The ALJ noted that needle EMG testing performed on June 27, 2007 did not find evidence for an ulnar mononeuropathy on either side, nor for a typical carpal tunnel syndrome. (R. 12.) In addition, the ALJ considered October 11, 2007 progress notes indicating that Castro was having occasional tingling in the ulnar digits, but less than previously, and her symptoms improved with wrist splint use. (*Id.*) Another note, dated April 7, 2008, stated that Castro had discontinued splint use. (*Id.*) The ALJ concluded that the statements, taken together, suggested that her condition had medically improved.

At Step 4, the ALJ found that Castro was unable to perform her past relevant work, which required constant use of her hands. (*Id.*) But the ALJ ultimately concluded at Step 5 that Castro was not disabled. (R. 13.) This finding was based on

6

Castro's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid"). (*Id.*) Pursuant to Medical-Vocational Rule 202.16,[3] Castro was not disabled, and the additional limitations on the use of her hands had "little to no effect on the occupational base of unskilled light work." (*Id.*)

### III. DISCUSSION

#### A. ALJ Legal Standard

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42. U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

---

[3] This rule applies to younger individuals (ages 18-49) who are illiterate or unable to communicate in English, who are either unskilled or lack previous work experience, and are limited to a light exertional level. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

B. **Judicial Review**

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are support by substantial evidence or based upon legal error. *Clifford v. Apfel,* 227 F.3d. 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning

8

behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### C. Analysis

Plaintiff argues that she was limited to only occasional, not frequent, use of her hands and arms, and thus the ALJ should have obtained vocational expert testimony rather than relying on the Grid in determining Castro was not disabled. Plaintiff cites Social Security Regulation ("SSR") 85-15[4] for the proposition that

---

[4] Interpretive rules, such as Social Security Regulations ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

9

significant limitations on reaching or handling may eliminate a large number of occupations a person could otherwise do, and that "'a vocational expert's assistance may be needed to determine the effects of the limitations.'" (Pl.'s Mot. at 8 (quoting SSR 85-15).) In addition, Plaintiff cites SSR 83-10, which describes the difference between "frequent," which "means occurring from one-third to two-thirds of the time," and "occasionally," which "means occurring from very little up to one-third of the time." (Pl.'s Mot. at 8 (quoting SSR 83-10).)

According to Castro, the medical evidence and her testimony support "at best" a finding that she could use her hands and arms only occasionally to grasp, hold, and turn objects as required for light work. (Pl.'s Mot. at 9.) She argues that because of her limitations, the ALJ should have obtained vocational expert testimony in making his disability determination.

The Commissioner responds that the ALJ's RFC finding was supported by medical evidence in the record, particularly treatment notes indicating symptom improvement as well as the normal EMG. In addition, Castro's daily activities showed that she could perform light work with frequent use of her hands. She drove, sometimes every day; she did not have problems opening a car door; she dusted, vacuumed, and cleaned her home about twice a week; she was able to go out to dinner; and she went to the grocery store and was able to carry the bags into the house if her children were not able to help her.

The Court is not persuaded by Plaintiff's arguments. First, Castro has not established that the ALJ's limitation of frequent use of her arms and hands was in

10

error. Castro's claim that she is limited to only occasional use of her hands is based solely on her testimony at the hearing. Plaintiff, however, does not dispute the ALJ's credibility finding, *i.e.*, that the claimed severity of symptoms is not supported by the medical evidence. *See Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007) (holding that an ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record). Castro points to no specific medical evidence supporting her claims of limitation and rebutting the credibility finding.

Moreover, even if the ALJ had not considered the medical evidence but only Plaintiff's testimony in determining her limitations, that would not require a finding that she suffered from disabling pain. In making a credibility finding about a claimant's pain level, an ALJ considers "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). Castro testified that she is able to perform housework and other chores, she does not take pain medication, she does not use ice or heat on her hands, and she does not need to use her splints at all times. An ALJ may consider a claimant's infrequent treatment in support of an adverse credibility finding. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also* SSR 96-7p (explaining that the credibility determination may consider whether the level or frequency of treatment is inconsistent with the level of complaints). And while an ALJ may not draw any adverse inferences from a lack of

11

care without considering the claimant's explanations for the failure, *see Craft*, 539 F.3d 679, Castro has offered no explanation at all.

Second, as pointed out by the Commissioner, the SSR cited by Plaintiff does not require an ALJ to hear vocational expert testimony but merely states that it "may be needed." Plaintiff has not given this Court any reason why vocational expert testimony was necessary in this case.

## **CONCLUSION**

For the foregoing reasons, Castro's motion for summary judgment [Doc. No. 10] is denied.

**SO ORDERED.**   **ENTERED:**

DATE:   **March 5, 2012**   _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**